```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

William E. Eley

    v.                                    Civil No. 14-cv-165-JL
                                                    Opinion No. 2015 DNH 085
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

William E. Eley has appealed the Social Security Administration's denial of his application for a period of disability and disability insurance benefits.  An administrative law judge at the SSA ("ALJ") ruled that, despite Eley's severe impairments (degenerative disc disease of the lower spine and obesity), he retains the residual functional capacity ("RFC") to perform sedentary work with specified limitations, allowing him to perform jobs that exist in significant numbers in the national economy in significant numbers and, as a result, is not disabled.  See 20 C.F.R. § 404.1505(a).  The Appeals Council later denied Eley's request for review, see id. § 404.968(a), with the result that the ALJ's decision became the final decision on Eley's application, see id. § 404.981.  Eley then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Eley has filed a motion to reverse the decision, see L.R. 9.1(b)(1), challenging it as unsupported by substantial evidence. Specifically, Eley argues that the ALJ erred in assessing his RFC by (1) giving little weight to the opinion of Eley's treating physician, and (2) giving greater weight to the opinion of a non-examining agency physician. The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision, see L.R. 9.1(e), defending the ALJ's handling of the opinion evidence. After careful consideration, the court agrees with the Acting Commissioner that the ALJ did not err in evaluating the opinion evidence, and therefore denies Eley's motion to reverse (and grants the Acting Commissioner's motion to affirm) the ALJ's decision.

The ALJ found that Eley retained the RFC to perform sedentary work with a few limitations, including that he requires the opportunity to stand up and sit down as needed. In evaluating Eley's RFC, the ALJ had two medical opinions at his disposal: that of Eley's treating physician, Dr. Daniel Calores, and that of a state agency reviewing physician, Dr. Hugh Fairley.

In July 2011, Dr. Fairley, who did not examine Eley, reviewed Eley's medical records and prepared an assessment of his RFC. Dr. Fairley acknowledged Eley's chronic lower back pain, leg pain and "significant lumbar degen[erative] disease," and

noted that "[e]pidurals & RFAs provided no lasting benefit." Admin. R. at 423.  Nevertheless, Dr. Fairley opined that Eley was capable of working full time and that he had the capacity to lift and/or carry 20 pounds occasionally and less than that frequently; he could stand and/or walk at least two hours but no more than four hours in an 8-hour workday; and he could sit for about six hours in an 8-hour workday.

In June 2012, Eley's treating physician, Dr. Calores, made a different assessment of Eley's RFC, believing that Eley's chronic low back pain imposed more significant limitations.  While Dr. Calores indicated that Eley could "perform sedentary activities, including frequent sitting or occasional standing/walking such as classroom situations, desk work, counseling sessions or other appointments," id. at 533, he concluded that Eley could only sit for at most two hours daily, and for only 10-15 minutes without interruption, and that he could only stand or walk for one hour each daily, again for only 10-15 minutes without interruption.  Dr. Calores further concluded that Eley could only occasionally lift 10-20 pounds and carry 10 pounds.  In summary, Dr. Calores opined, Eley was unable to "work part or full time due to chronic pain [in the] low back [and] legs."  Id.

The ALJ afforded Dr. Fairley's opinion "greater weight," finding it to be "most consistent with the records showing that

the claimant has remained quite active caring for his children" and "consistent with records from Dr. Brown who noted that the claimant was doing well in March 2012." Id. at 17.  In contrast, the ALJ afforded "limited weight" to Dr. Calores's opinion, reasoning that his opinion was "internally inconsistent and [] not well supported by his own clinical observations." Id.  The ALJ explained:

> In January 2011, [Dr. Caloras] opined that the claimant was not capable of working even part-time, but in June 2012, he described the claimant as able to lift and carry 10-20 pounds.  Moreover, in June 2012, he opined that the claimant could perform sedentary activities including frequent sitting or occasional standing and walking such as is required for deskwork.  In this case, Dr. Caloras's opinion is internally inconsistent and is not well supported by his own clinical observations.

Id.  Adopting Dr. Fairley's opinion, the ALJ concluded that Eley "has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except the claimant requires the opportunity to alternate sitting and standing as needed." Id. at 15.  Eley maintains that the ALJ's allocation of weight to the competing medical opinions and, resultantly, this conclusion, was erroneous.  The court disagrees.

**Treating Source Opinion**

In arguing that the ALJ should have afforded more weight to Dr. Caloras's opinion, Eley invokes the SSA's rule that more weight should generally be accorded to treating sources than non-treating sources. 20 C.F.R. § 404.1527(c)(1). The opinion of a treating physician must be given controlling weight if it is well supported and not inconsistent with other evidence on the record. Id. § 404.1527(c)(2). If controlling weight is not afforded the opinion of a treating source, the ALJ must "give good reasons" for the weight afforded that source. Id. § 404.1527(c)(2). "The 'good reasons' requirement mandates that the ALJ's order 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.'" Delafontaine v. Astrue, 2011 DNH 005, at 38-39 (quoting Social Security Ruling ("SSR") 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5 (S.S.A. 1996)). The ALJ need not, as Eley suggests, explicitly take account of all the factors articulated in 20 C.F.R. § 404.1527(c) in determining what weight to give a treating physician's opinion, so long as the court is "able to

discern the rationale the ALJ used to reach his determination and that determination is founded on 'good reasons' that are supported by substantial record evidence." Figueroa v. Astrue, 2012 DNH 101, at 15 (Barbadoro, J.).

In this case, the court concludes that the ALJ could properly limit the weight given to the treating source opinions because the record supports his finding that Dr. Caloras's opinions were inconsistent and not supported by his clinical observations.

The ALJ first discounted Dr. Caloras's opinion on the grounds that Dr. Caloras "provided inconsistent opinions" because he opined in January 2011 that Eley "was not capable of working even part-time," but in June 2012 described Eley as "able to lift and carry 10-20 pounds" and capable of "perform[ing] sedentary activities including frequent sitting or occasional standing and walking such as is required for deskwork."  Admin. R. at 17. Eley argues that the ALJ misconstrued Dr. Caloras's opinion to find inconsistency where none existed.  The court disagrees.

On the "Physician/Clinician Statement of Capabilities" form that Dr. Caloras filled out on June 27, 2012, Dr. Caloras assessed Eley as able to "perform sedentary activities including <u>frequent</u> sitting or occasional standing/walking such as is required for . . . desk work," sit for two hours daily, and stand

6

and walk each for one hour daily.  Id. at 553.  He did not indicate that any "added breaks or change of position" were necessary.  Id.  That same day, Dr. Caloras completed a second evaluation in which he indicated that Eley could sit no more than 2 hours per day and stand and/or walk for one hour per day.  Here, Dr. Caloras indicated that Eley could do none of these for more than 10-15 minutes at a time.  In both cases, Dr. Caloras concluded that Eley was not capable of working full- or part-time.  Thus, on the one hand, Dr. Caloras opined that Eley could perform activities requiring "frequent sitting or occasional standing/walking" for up to four hours; on the other, he opined that Eley could not work even part-time.  Similarly, Dr. Caloras indicated on one form that Eley required frequent changes in position, but did not mention this limitation on the other.  This evidence supports the ALJ's determination that Dr. Caloras's opinions are internally inconsistent.

   The court does agree with Eley that there is no inherent inconsistency between Dr. Caloras's June 2012 conclusion that Eley could occasionally lift 10-20 pounds and his January 2011 conclusion that Eley was not capable of working full- or part-time.  The ability to occasionally lift up to 20 pounds and carry up to 10 pounds alone does not alone render an individual able to work even part-time.  However, because substantial evidence

supports the ALJ's other justifications for discounting Dr. Caloras's opinion, this is not dispositive.

The ALJ's finding that Dr. Caloras's opinion was "not well supported by his own clinical observations," id. at 17, is also supported by substantial evidence. As described supra, Dr. Caloras provided his opinions on two forms, both dated June 27, 2012. Both forms are essentially check-box forms in which Dr. Caloras selected the appropriate box and filled in the appropriate blanks. Though both forms provided an opportunity for Dr. Caloras to indicate which observations or analyses supported his selections, he did not do so except to reference Eley's back pain in a general manner. For example, on the Medical Assessment of Ability to do Work-Related Activities form, when asked to provide the medical findings in support of Dr. Caloras's opinion that Eley can only stand or walk for one hour in an eight-hour day, Dr. Caloras wrote only, "[increased] lower back & leg pain with too much walking." Id. at 528. In response to the same question seeking support for his opinion that Eley can only sit for up to two hours in an eight-hour day, Dr. Caloras wrote, "[increased] pain with excess sitting with stiffness & pain in lower back." Id. Similarly, on the Physician/Clinician Statement of Capabilities form, Dr. Caloras's only explanation for his conclusions was that Eley had an

"[i]nability to work part or full time due to chronic pain\low back\legs."  Id. at 533.  The ALJ correctly discounted these opinions because they lacked explanation or even reference to Dr. Caloras's own treatment notes, and therefore were not supported by Dr. Caloras's clinical observations.  See McGrath v. Astrue, 2012 DNH 060, at 13 n.13; 20 C.F.R. § 404.1527(d)(3); cf. Tremblay v. Sec'y of HHS, 676 F.2d 11, 13 (1st Cir. 1982) (treating physician's opinion entitled to no more weight than a consulting physician's if the disability assessment is conclusory).

Attempting to show that Dr. Caloras's previous conclusions supported his June 2012 opinions, Eley points to a series of six letters written by Dr. Caloras between January 2011 and October 2011.  In these letters, Dr. Caloras asked that Eley be excused from his child support duties because he was unable to work full- or part-time.  As the Acting Commissioner correctly observes, these letters simply state that Eley was unable to work because of back pain.  Because, like Dr. Caloras's June 27, 2012 opinions, they are cursory and lack any analysis, as explained supra, the ALJ can properly give such an opinion less weight.

Eley also argues that office notes from specialists at Dartmouth Hitchcock Medical Center, of which Dr. Caloras received copies, also support Dr. Caloras's opinions.  But Dr. Caloras

9

does not reference these office notes in his opinions. Nor does he explain how (or even that) he relied on them in forming his opinions. Without analysis by the opining physician, it would be an error for the ALJ to analyze these records himself, for except in the rare case "where the medical evidence shows relatively little physical impairment," Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 17 (1st Cir. 1996)--which is not this case--an ALJ "cannot assess the claimant's RFC himself, 'since bare medical findings are unintelligible to a laypeson in terms of RFC.'" Levesque v. Colvin, 2014 DNH 191, at 2-3 (quoting Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990)).

Since it is the province of the ALJ to weigh the evidence and there is substantial support for the ALJ's decision to discount Dr. Caloras's opinion, see Tremblay, 676 F.2d at 12, the court finds no error.

**Consulting Source Opinion**

Having determined that the ALJ could reasonably discount the RFC assessments of Dr. Caloras, the court must now consider whether he was justified in relying more heavily on the opinion of Dr. Fairley, a non-treating physician. The ALJ need not grant the treating physician's opinion greater weight than a consulting physician's when, as here, the treating physician's assessment is conclusory. Tremblay, 676 F.2d at 13. "The ALJ's decision to

adopt an assessment by a non-treating physician is further supported if that assessment references specific medical findings indicating that the claimant's file was reviewed with care." Moss v. Astrue, 2011 DNH 064, at 46 (citing Berrios Lopez v. Sec'y of HHS, 951 F.2d 427, 431 (1st Cir. 1991)).

The ALJ explained that he afforded "greater weight" to the opinion of the state agency reviewing physician, Dr. Fairley, for two reasons:  (1) Dr. Fairley's opinion was "most consistent with the records showing that the claimant has remained quite active caring for his children," and (2) his opinion was consistent with the records of Eley's rheumatologist, Dr. Lin A. Brown.  Admin. R. at 17.  Eley challenges this reasoning as "inadequate."  Cl. Br. at 11.

First, Eley faults the ALJ for what he perceives as an over-reliance on Eley's daily activities caring for his children. Eley contends that, because he only obtained custody of his children in June 2012 and had difficulty caring for them himself, those activities do not support an RFC of sedentary work.[1]  While the ability to perform basic household tasks, taken alone, "does

---

[1] Specifically, Eley testified that, during the summer, his parents helped him care for his children because, "with my back pain and what not I'm not able to keep up with the children like they want me to."  Admin. R. at 38.  The ALJ questioned the credibility of Eley's testimony that his pain increased with activity, however.  See id. at 16.  Eley does not dispute that conclusion.

11

not equate with an ability to perform substantial gainful activity," Delafontaine, 2011 DNH 005, at 11, evidence in the record reflects that Eley was able to do more than merely give basic care to his children.  In addition to preparing meals for the children, getting them ready for school and onto the school bus, helping them with their homework, and doing household chores such as vacuuming and dishes, evidence in the record also shows that Eley was able to "play video games, use a computer, . . . drive, play games online with others and go fishing."  Admin. R. at 14.

Eley also argues that the ALJ misconstrued Dr. Brown's March 22, 2012 observation that "Mr. Eley has done well with Humira," a drug prescribed for his joint pain, to mean that Eley was "doing well" overall in March 2012.  Cl. Br. at 12.  To the contrary, the ALJ's conclusion does not appear to have been based on a single sentence concerning Humira, but on Dr. Brown's report as a whole.  For example, after that same visit, Dr. Brown noted that Humira "made a significant improvement in [Eley's] back pain" and that Eley "had about a 60% improvement from baseline" and reported that he "only ached at the end of the week."  Admin. R. at 514.  Eley's treating physician, Dr. Caloras, noted similar improvements, observing a few months later--in July 2012--that the Humira "helped [Eley's] whole body and joint pain."  Id. at

547. The ALJ did not clearly err by interpreting Dr. Brown's statements to mean that Eley was "doing well" in March 2012, nor in finding Dr. Fairley's opinion consistent with those statements. Accordingly, the court concludes that the ALJ did not err in choosing to assign greater weight to Dr. Fairley's decision.[2]

**Conclusion**

As this court has observed, an ALJ can rely "on the assessments of non-testifying, non-examining physicians" in adjudicating a claimant's RFC, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve." Morin v. Astrue, 2011 DNH 091, 9-10 (citing Tremblay, 676 F.2d at 12). Furthermore, "[t]he ALJ decision to resolve that conflict against the claimant should be affirmed if "'that conclusion has substantial support in the record.'" Id. (quoting Tremblay, 676 F.2d at 12). Because, for the reasons just

---

[2]Finally, Eley argues that the ALJ erred when he posed a hypothetical question to the vocational expert that was "based upon the functional limitations found by the state agency." Cl. Br. at 13. Having concluded that the ALJ's RFC determination was proper and supported by substantial evidence in the record, the court finds no error.

explained, that is the case here, Eley's motion to reverse the SSA's decision[3] is DENIED, and the Commissioner's motion to affirm it[4] is GRANTED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated: April 21, 2015

cc: Bennett B. Mortell, Esq.
    Robert J. Rabuck, AUSA

---

[3]Document no. 7.

[4]Document no. 9.